## UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**STANLEY E. JARVAR** and<br>**BARBARA J. KRAMER-JARVAR**,<br><br>        Debtors. | Case No. **04-62762-7** |
| **BARBARA JARVAR**,<br><br>        Plaintiff.<br><br>-vs-<br><br>**TITLE CASH OF MONTANA, INC., EZ TITLE PAWN INC**, and **HUTCHESON ENTERPRISES INC**,<br><br>        Defendants. | Adv No. **09-00028** |

## MEMORANDUM  OF  DECISION

At Butte in said District this 29th day of April, 2010.

In this adversary proceeding Plaintiff's Second Motion for Summary Judgment (Docket No. 74) is pending against Defendants Title Cash of Montana, Inc. ("Title Cash"), EZ Title Pawn, Inc. ("EZ Title"), Hutcheson Enterprises, Inc. ("Hutcheson, Inc."), and Roy Hutcheson ("Hutcheson") on the issue of liability only on Counts V, VII, VIII, IX, and X of Plaintiff's 3rd Amended and Substituted Complaint ("3rd Complaint") (Dkt. 64).  Title Cash filed a response in

1

opposition and a cross motion for partial summary judgment on Count V (Dkt. 98[1]).  Plaintiff

filed a reply brief (Dkt. 105), and a hearing on these matters was held at Missoula on March 19,

2010.  The parties appeared represented by counsel.  Attorneys James H. Cossitt ("Cossitt") of

James H. Cossitt, PC, Kalispell, Montana, and Eric S. Hummel ("Hummel") of Kalispell

appeared representing the Plaintiff, and Thane Johnson ("Johnson") of Johnson, Berg, McEvoy

& Bostock, PLLP Kalispell appeared representing Defendants.  After hearing argument of

counsel the Court took both motions for summary judgment under advisement at the conclusion

of the hearing.  The motions for summary judgment and briefs have been reviewed by the Court,

together with the record and applicable law.  These matters are ready for decision.  For the

reasons set forth below, Plaintiff's second motion for summary judgment and Title Cash's cross

motion for summary judgment both will be denied.

　　　The parties agree that this Court has jurisdiction of this removed adversary proceeding

under 28 U.S.C. § 1334(b) and 28 U.S.C. § 1367, and that this is a core proceeding under 28

U.S.C. § 157(b)(2).  This memorandum contains the Court's findings of fact and conclusions of

law under Fed. R. Bankr. P. 7052 (applying Fed. R. Civ. P. 52) in adversary proceedings.

　　　Plaintiff's second motion[2] seeks summary judgment for liability on several counts of

---

[1]The condition of Defendant's response brief and cross motion, Docket No. 98, warrants comment.  The bold subject headings at pages 2, 5, 6, 8, 10, and 14, all are missing letters which render the headings almost indecipherable.  Whether that is a result of a computer glitch or some other reason, it is not this Court's role to fill in the blanks.  Rule 9011(b) requires an "inquiry reasonable under the circumstances" before presenting a paper to the Court, which at a minimum requires quality control such as review or proofreading before filing a paper.  Johnson's filing of Dkt. 98 in such a condition falls short of the standard of practice expected in this Court.

[2]Plaintiff's first motion for summary judgment (Dkt. 18) was granted in part and denied in part by Memorandum of Decision (Dkt. 55) and Order (Dkt. 56) entered on December 18, 2009.  Trial is scheduled to commence on May 17, 2010.

Plaintiff's 3rd Complaint. Count V seeks judgment against Title Cash for unfair or deceptive acts or practices in violation of the Montana Unfair Trade Practices and Consumer Protection Act of 1973 (hereinafter the "CPA"), MONTANA CODE ANNOTATED ("MCA") § 33-14-101, et seq.), with the amount of damages to be determined at trial. Count VII seeks judgment against Hutcheson and Hutcheson, Inc., based on the theory of alter ego. Count VIII seeks judgment against EZ Title and Hutcheson based on theories of successor liability[3]. Count IX seeks judgment against Title Cash, EZ Title, and Hutcheson, Inc., based on the equitable theory of piercing the corporate veil. Count X seeks judgment and liability against all Defendants avoiding the corporate transfers from Title Cash to EZ Title as fraudulent transfer under MCA § 31-2-333(2). Title Cash opposes Plaintiff's second motion contending that genuine issues of material fact exist with respect to each Count, and moves for summary judgment barring Plaintiff's CPA claim of Count V under the theory of collateral estoppel.

### FACTS

Plaintiff set forth the following facts in support of her second motion for summary judgment in her Statement of Uncontroverted Facts at Dkt. 75[4]:

### I. CREATION AND DISSOLUTION OF TITLE CASH.

1. On 5/27/1999, Roy Hutcheson ("Hutcheson"), as Incorporator, filed Articles of Incorporation of Title Cash of Montana, Inc. ("Title Cash"). [Exhibit

---

[3]By Stipulation (Dkt. 113), which was approved by Order entered March 24, 2010 (Dkt. 114) the parties agree that EZ Title is liable for any judgment entered against Title Cash under Count VIII. The Stipulation does not mention Hutcheson.

[4]In addition Plaintiff requested the Court take judicial notice of the factual findings set forth in Dkt. 55, pages 2-5, which are incorporated by reference as though set forth in full herein.

1[5], page 118, lines 7-8; page 128, lines 22-25 to page 129, lines 1-2; Exhibit 2].

2.  Hutcheson was named the Director in Title Cash's Articles of Incorporation. [Exhibit 2, Page 2].

3.  Hutcheson owns 55% of Title Cash's stock. [Exhibit 1, page 118 - 119].

4.  Hutcheson's wife and children own 45% of Title Cash's stock. [*Id.*].

5.  Hutcheson is Title Cash's president and director. [Exhibit 1, page 118, lines 9-11; page 33, line 18 to page 34, line 11; Exhibit 2].

6.  Hutcheson's address was listed as 3705 Sullivan Street, Madison, AL 35758 in Title Cash's Articles of Incorporation. [Exhibit 2, page 2].

7.  Title Cash's principal mailing address was listed as 3705 Sullivan, Madison, AL 35758 in its Articles of Incorporation. [Exhibit 2, page 2].

8.  On 8/31/2008, Title Cash and EZ Title Pawn, Inc. ("EZ Title") entered into an Asset Purchase Agreement. [Exhibit 11].

9.  Hutcheson prepared the Asset Purchase Agreement. [Exhibit 1, page 39, lines 4-13].

10.  Hutcheson signed the Asset Purchase Agreement as President for both the seller, Title Cash, and the purchaser, EZ Title. [Exhibit 1, page 33, line 18 to page 34, line 11; page 39, lines 4-13; *See also* Exhibit 11].

11.  Pursuant to the Asset Purchase Agreement, EZ Title purchased Title Cash for $692,937.46. [Exhibit 1, page 39, lines8-25 to page 42, lines1-17; *See also* Exhibit 11].

12.  Pursuant to the Asset Purchase Agreement, Title Cash assumed all liabilities associated with Title Cash's loans while agreeing to indemnify and hold EZ Title, its officers, directors and shareholders, harmless from all business operations that predate the closing of the transaction, which includes but is not limited to Kramer's litigation matter. [Exhibit 1, page 47, lines 1-19 (referring to the Asset Purchase Agreement discussed on page 45, lines 14-20); *See also* Exhibit 11].

---

[5]All references to exhibits were in Plaintiff's Statement of Uncontroverted Facts (Dkt. 75), and exhibits filed therewith.

4

13.  On 2/02/2009, Hutcheson, as President of Title Cash, electronically filed a Montana Corporation Annual Report so Title Cash would remain active and in good standing and prevent involuntary dissolution/revocation. [Exhibit 22].

14.  On 3/16/2009, Hutcheson, as President of Title Cash, filed Articles of Dissolution for Title Cash. [Exhibit 23].

15.  Hutcheson authorized Title Cash's date of dissolution as of 12/31/2008. [Exhibit 23, page 2].

## II.  CREATION OF EZ TITLE.

16.  On 4/18/2000, Hutcheson, as Incorporator, filed Articles of Incorporation of EZ Title. [Exhibit 3].

17.  Hutcheson was named the director on EZ Title's Articles of Incorporation. [Exhibit 3, Article VI].

18.  Hutcheson is EZ Title's president. [Exhibit 1, page 33, line 18 to page 34, line 11; Exhibit 3].

19.  Hutcheson owns 55% of EZ Title's stock. [Exhibit 1, page 34, lines 12-25 to page 35, lines 1-7].

20.  Hutcheson's wife and children own 45% of EZ Title's stock. [*Id.*].

21.  Hutcheson's address listed on EZ Title's Articles of Incorporation is 4211 Oakwood Ave., Huntsville, AL 35758. [Exhibit 3, Article VII].

22.  The principal mailing address of EZ Title listed on the Articles of Incorporation is 4211 Oakwood Ave., Huntsville, AL 35810. [Exhibit 3, Article VIII].

## III.  CREATION OF HUTCHESON ENTERPRISES, INC.

23.  On 8/16/2000, Hutcheson, as Incorporator, filed Articles of Incorporation of Hutcheson Enterprises, Inc. ("Hutcheson, Inc."). [Exhibit 1, page 16, line 13 to page 17 lines 4; Exhibit 4].

24.  Hutcheson is named the registered agent in Hutcheson, Inc.'s Articles of Incorporation. [Exhibit 4, Article V].

25.  Hutcheson was named the Director in Hutcheson, Inc.'s Articles of

Incorporation. [Exhibit 4, Article VI].

26. Hutcheson is the president of Hutcheson, Inc. [Exhibit 1, page 12, lines 10-12].

27. Hutcheson owned 55% of Hutcheson, Inc.'s stock. [Exhibit 1, page 13, lines 6-25].

28. Hutcheson's wife and children own 45% of Hutcheson, Inc.'s stock. [*Id.*].

29. Hutcheson's address listed on Hutcheson, Inc.'s Articles of Incorporation was 4211 Oakwood Ave., Huntsville, AL 35758. [Exhibit 4, Article VII].

30. The principal mailing address of Hutcheson, Inc. listed on the Articles of Incorporation was 4211 Oakwood Ave. Huntsville, AL 35810. [Exhibit 4, Article VIII].

### IV. EZ TITLE'S RELATIONSHIP TO TITLE CASH.

31. On 8/31/2008, EZ Title and Title Cash, through Hutcheson as President of both companies, signed an Asset Purchase Agreement that sold Title Cash's going concern value to EZ Title for $692,937.46. [Exhibit 1, page 33, line 22 to page 34, line 11; pages 39 to 42, lines 1-20; page 47, lines 1-19 (referring to the Asset Purchase Agreement discussed on page 45, lines 14-20); page 132, lines 13-18; page 133, lines 10-13; *See also* Exhibit 11].

32. Title Cash dissolved because of ongoing litigation that Hutcheson felt would bankrupt the company. [Exhibit 1, page 21, lines 2-12].

33. Pursuant to the Asset Purchase Agreement, EZ Title agreed to pay Title Cash $692,937.46, which Hutcheson testified was subsequently used to pay debts owed to Hutcheson, in exchange for Title Cash's: 1) going concern value; 2) agreement to assume all debts including but not limited to Kramer's litigation matter; and 3) agreement to indemnify and hold EZ Title, its officers, directors and shareholders, harmless from all business operations that predate the closing of the transaction, which includes but is not limited to Kramer's litigation matter. [Exhibit 1, page 131, line 20 to page 133; page 47, lines 1-19 (referring to the Asset Purchase Agreement discussed on page 45, lines 14-20); page 39, line 8 to page 42, line 20; Exhibit 11].

34. Pursuant to the Asset Purchase Agreement, EZ Title retained and is

currently using the following: 1) the name d/b/a Title Cash; 2) Title Cash's phone lines; 3) Title Cash's utility, receivable bank accounts, fixed assets, petty cash, lease and other deposits; 4) Title Cash's customers files with account status of open, paid-out, charged-off and worthless checks; 5) Title Cash's leases; and 6) Title Cash's employees. [Exhibit 1, page 39, lines 22-25 (leases); page 47, lines 23-25 (leases); page 128, lines 1-7, 15-21 (leases); page 48, lines 7-11 (assets and utilities); page 128, lines 8-14 (assets); page 130, line 21 to page 131, line 1 (assets); page 132, lines 7-12 (utilities); page 48, lines 1-3 (phone lines); page 48, lines 4-6 (name); page 130, lines 13-23 (name) ; page 126, 127 (employees); Exhibit 11].

35.   EZ Title and Title Cash hired the same attorney, Thane Johnson. [Docket 053-0; Exhibit 12].

## V.  HUTCHESON, INC.'S RELATIONSHIP TO TITLE CASH.

36.  Title Cash pays Hutcheson, Inc. a basic, standard monthly rate for services it provides. [Exhibit 1, page 19, line 14 to page 21, line 8].

37.  Hutcheson, Inc. performs several services that are involved in direct management of Title Cash. [*See Id.*].

38.  Hutcheson, Inc. supervised Lisa Harshbarger while she was a manager of Title Cash. [Exhibit 1, page 20, line 14 to page 21, line 1; page 123, lines 3-8; Exhibit 5, page 51-54; page 57, lines 15-18].

39.  Hutcheson, Inc. performs certain loans and loan administration for Title Cash. [Exhibit 1, Page 20, lines 14-21].

40.  Hutcheson Inc. provides instructions to Title Cash employees, if the employees have something they do not know how to handle. [Exhibit 1, page 107, lines 7-13].

41.  Hutcheson, Inc. provides accounting, taxes, managing facilities, human resources, and training for Title Cash. [Exhibit 1, page 19, lines 12-20; page 60, lines 17-19; Exhibit 5, page 51, line 12 to page 52, line 1].

42.  Hutcheson, Inc., through Maurice Hardman, directed Title Cash in bankruptcy matters. [Exhibit 1, page 121, line 20 to page 122, line 11; Exhibit 5, page 35, lines 6-24; page 39, line 16 to page 40, line 6;].

43.  Hutcheson, Inc. filed annual reports for Title Cash. [Exhibit 1, page 25, line 5 to page 26, line 2].

7

44.  Dewanna McMeans, as a representative of Hutcheson, Inc. filed proofs of claims no. 13 & 14, in case number 01-53527. [Exhibit 1, page 81, line 17 to page 84, line 9; Exhibits 6, 7].

45.  Hutcheson, Inc., provided directions regarding repossession of Kramer's 1999 Suburban. [Exhibit 1, page 100, line 15 to page 101, line 4].

46.  Hutcheson, Inc. prepared spreadsheets for loan number 767 in regards to *In the Matter of Title Cash of Montana, Inc.*, Case No. VI-01-2006, that was filed with the Department of Administration. [Exhibit 1, page 105, line 24 to page 106, line 19 (referring to Exhibit 8 as noted by the quoted language); Exhibit 8].

47.  Hutcheson, Inc. directed Title Cash's operations by determining the interest rates on customer loans. [*See* Exhibit 1, pages 109-112; Exhibits 9, 10].

48.  Hutcheson, Inc., through Hutcheson and Tom Hutcheson, and pursuant to this matter, supervises and directs Harshbarger, the manager of Title Cash and EZ Title. [Exhibit 1, page 100, line17 to page 101, line 4; Exhibit 5, page 57, lines 15-18].

49.  Hutcheson, Inc. and Title Cash hired the same attorney, Thane Johnson, in this matter. [*See* Docket No. 053-0].

## VI.  FACTS RELEVANT TO COUNT V OF THE 3RD AMENDED AND SUBSTITUTED COMPLAINT.

50.  On 11/02/2001, Kramer signed Notes 767 and 768. [Exhibits 14, 15].

51.  Collateral listed on Note 767 was described as a 1999 CHEV, SUB, vehicle identification number ("VIN") xxx4993. [Exhibit 14].

52.  Collateral in Note 768 was described as a 1999 GMC, SUB, VIN xxx4991. [Exhibit 15].

53.  Title Cash knowingly and intentionally changed the VIN on Note 768 to comply with Title Cash's software that would not allow loans over $9,999.99 to be processed. [*See* Exhibit 1, page 74, line 17 to page 78, line 2; page 119, line 3 to page 120, line 5; page 120, line 17 to page 121, line 7].

54.  On 11/23/2001, Kramer filed a Chapter 13 bankruptcy. [Case No. 01-53527-13, Docket No. 001-0].

55. On 01/23/2002, Trustee Robert Drummond mailed a letter to Title

8

Cash that requested evidence of Title Cash's secured interest in Kramer's Suburban. [Exhibit 16].

56.   On 3/29/2002, Title Cash knowingly and intentionally filed proof of claim 14, and correctly claimed that Note 767 created a security interest in Kramer's 1999 Suburban. [Exhibit 7].

57.   On 3/29/2002, Title Cash knowingly and intentionally filed a false proof of claim #13 that falsely claimed Note 768 created a security interest in Kramer's Suburban, and attempted to prove the security interest by filing a lien notice that was filed on VIN 4993. [*See* Exhibit 1, page 74, line 17 to page 78, line 2; page 119, line 3 to page 120, line 3; page 120, line 17 to page 121, line 7; Exhibit 6].

58.   Title Cash withdrew proof of claims 13 and 14, and knowingly and intentionally filed two more proofs of claims that combined both notes and falsely claimed that both Notes 767 and 768 were secured. [Case No. 01-53527, Claim Nos. 15, 18].

59.   On 2/03/2004, the trustee's final report was filed, which provided $6,046.00 in principal and $1,041.83 in interest for Title Cash of Kalispell's proof of claim 14. [Case No. 01-53527, Docket No. 100; Exhibit 17].

60.   On 2/26/2007, Title Cash, through Peter Funk and Hutcheson Enterprise, mailed a letter to the Department of Administration with an enclosed spreadsheet for both Notes 767 and 768 that evidenced payments to both Notes during and after the Chapter 13 bankruptcy Case No. 01-53527, and after Kramer's Chapter 7, Case No. 04-62762, discharge on 1/19/2005. [Exhibit 19].

61.   On 5/01/2007, Title Cash, through Peter Funk, signed a Settlement Agreement with the Department of Banking agreeing that it engaged in unfair and fraudulent practices and admitted: 1) several errors in the transactions which caused Title Cash to make two separate loans, one loan which was improperly documented; and 2) loan number 768 is an unsecured loan. [Exhibit 20].

62.   On 12/9/2008, Title Cash filed an Answer and Counterclaim and asserted in the Counterclaim, paragraph 3, that "Kramer entered into two Promissory Notes and security agreements with Title Cash secured by a security interest in a 1999 Chevrolet Suburban, VIN Number 1GNFK16RXXJ564993". [Exhibit 21].

## VII.  FACTS RELEVANT TO COUNT VII OF THE 3RD AMENDED AND SUBSTITUTED COMPLAINT.

**A. Hutcheson's alter ego and corresponding liability.**

63.  Hutcheson is Title Cash's, EZ Title's, and Hutcheson, Inc.'s incorporator, director, and president. [Exhibit 1, page 118, lines 7-11; page 33, line 18 to page 34, line 11; page 128, line 22 to page 129, line 2; Exhibit 2].

64.  Hutcheson owns 55% of the Title Cash's, EZ Title's, and Hutcheson, Inc.'s stock. [Exhibit 1, page 118, line 9 to page 119, line 2 (Title Cash); Exhibit 1, page 118, line 9 to page 119, line 2 (Hutcheson, Inc.); Exhibit 1, page 34, line 12 to page 35, line 7 (EZ Title)].

65.  Hutcheson's wife and children collectively own 45% of Title Cash's, EZ Title's, and Hutcheson, Inc.'s stock. [Id.].

66.  Hutcheson personally capitalized Title Cash at its inception with a line of credit of $5,000,000.00 to $10,000,000.00. [Exhibit 1, page 43, lines 1-20; page 44, line 8 to page 45, line 5].

67.  Hutcheson's mailing address was identical as Title Cash's, EZ Title's, and Hutcheson, Inc.'s principal mailing addresses as listed on the respective articles of incorporation. [Exhibits 2, 3, 4].

68.  Hutcheson has control of Title Cash, EZ Title, and Hutcheson, Inc. as their controlling shareholder, director, and president. [Exhibit 1, page 130, lines 13-17; Supra at ¶¶ 63, 64].

69.  Hutcheson dissolved Title Cash, because he believed ongoing litigation would bankrupt the company. [Exhibit 1, page 21, lines 2-12].

70.  Hutcheson prepared the Asset Purchase Agreement between Title Cash and EZ Title. [Exhibit 1, page 39, lines 4-13].

71.  Pursuant to the Asset Purchase Agreement, EZ Title agreed to pay Title Cash $692,937.46, which was subsequently used to pay debt's owed to Hutcheson, in exchange for Title Cash's: 1) going concern value; 2) agreement to assume all debts including but not limited to Kramer's litigation matter; and 3) agreement to indemnify and hold EZ Title, its officers, directors and shareholders, harmless from all business operations that predate the closing of the transaction, which includes but is not limited to Kramer's litigation matter. [Supra at ¶ 33].

72.  Hutcheson, through Hutcheson, Inc., was involved with direct management of Title Cash including approval of certain loans and loan administration, which included writing letters to the Department of

10

Administration regarding the Kramer matter. [Exhibit 1, page 20, line 14 to page 21, line 1; Exhibit 24].

73.  Hutcheson, through Hutcheson, Inc., provided directions regarding repossession of Kramer's 1999 Suburban. [Exhibit 1, page 100, line 15 to page 101, line 4].

74.  Hutcheson and Title Cash hired the same attorney, Thane Johnson, in this matter. [*See* Docket No. 072-0].

**B.  Hutcheson, Inc.'s alter ego and corresponding liability.**

75.  Title Cash pays Hutcheson, Inc. a basic, standard monthly rate for services it provides. [Exhibit 1, page 19, line 12 to page 20, line 8]. Hutcheson, Inc. performs several services that are involved in direct management of Title Cash. [Exhibit 1, page 20, lines 14-18].

76.  Hutcheson, Inc. performs several services that are involved in direct management of Title Cash. [Exhibit 1, page 20, lines 14-18].

77.  Hutcheson, Inc. supervised Lisa Harshbarger while she was a manager of Title Cash. [Exhibit 1, page 20, line 14 to page 21, line 1; page 123, lines 3-8; Exhibit 5, page 51, line 12 to page 52, line 1; page 57, lines 15-18].

78.  Hutcheson, Inc. performs certain loans and loan administration for Title Cash. [Exhibit 1, Page 20, lines 14-21].

79.  Hutcheson Inc. provides instructions to Title Cash employees, if the employees have something they do not know how to handle. [Exhibit 1, page 107, lines 10-13].

80.  Hutcheson, Inc. provides accounting, taxes, managing facilities, human resources, and training for Title Cash. [Exhibit 1, page 19, lines 12-20; page 60, lines 17-19; Exhibit 5, page 51, line 12 to page 52, line 1].

81.  Hutcheson, Inc., through Maurice Hardman, directed Title Cash in bankruptcy matters. [Exhibit 5, page 35, lines 6-24; page 39, line 16 to page 40, line 6; Exhibit 1, page 121, line 20 to page 122, line 11].

82.  Hutcheson, Inc. filed annual reports for Title Cash. [Exhibit 1, page 25, lines 5-25; page 26, lines 1-2].

83.  Dewanna McMeans, as a representative of Hutcheson, Inc. filed

11

proofs of claims no. 13 & 14, in case number 01-53527. [Exhibit 1, page 81, line 17 to page 84, line 9; Exhibits 6, 7].

84.  Hutcheson, Inc., provided directions regarding repossession of Kramer's 1999 Suburban. [Exhibit 1, page 100, line 15 to page 101, line 4].

85.  Hutcheson, Inc. prepared spreadsheets for loan number 767 in regards to *In the Matter of Title Cash of Montana, Inc.*, Case No. VI-01-2006 that was filed with the Department of Administration. [Exhibit 1, page 105, line 24 to page 106, line 19; *See also* Exhibits 8].

86.  Hutcheson, Inc. directed Title Cash's operations by determining the interest rates on customer loans. [*See* Exhibit 1, page 111, lines 6-25; Exhibits 9, 10].

87.  Hutcheson, Inc., through Hutcheson and Tom Hutcheson, and pursuant to this matter, supervises and directs all Title Cash and EZ Title employees. [Exhibit 1, page 100, line 17 to page 101, line 4; Exhibit 5, page 57, lines 15-18].

88.  Hutcheson, Inc. and Title Cash hired the same attorney, Thane Johnson, in this matter. [*See* Docket No.'s 053-0, 072-0].

## VIII.  FACTS RELEVANT TO COUNT VIII OF THE 3RD AMENDED AND SUBSTITUTED COMPLAINT.

### A.  Hutcheson and EZ Title's liability pursuant to successor liability.

89. On 5/27/1999, Hutcheson, as Incorporator, filed Articles of Incorporation of Title Cash of Montana, Inc. ("Title Cash"). [Exhibit 1, page 118, lines 7-8; page 128, line 22 to page 129, line 2; Exhibit 2].

90.  Hutcheson was named the Director in Title Cash's Articles of Incorporation. [Exhibit 2, Page 2].

91.  Hutcheson owns 55% of Title Cash's stock. [Exhibit 1, page 118, line 9 to page 119, line 2].

92.  Hutcheson's wife and children own 45% of Title Cash's stock. [*Id.*].

93.  Hutcheson is Title Cash's president. [Exhibit 1, page 118, lines 9-11; Exhibit 2].

94.  On 4/18/2000, Hutcheson, as Incorporator, filed Articles of Incorporation of EZ Title. [Exhibit 3].

95.  Hutcheson was named the director on EZ Title's Articles of Incorporation. [Exhibit 3, Article VI].

96.  Hutcheson is EZ Title's president. [Exhibit 1, page 33, line 18 to page 34, line 11; page 39, lines 8-13; Exhibit 3].

97.  Hutcheson owns 55% of EZ Title's stock. [Exhibit 1, page 34, line 12 to page 35, line 7].

98.  Hutcheson's wife and children own 45% of EZ Title's stock. [*Id.*].

99.  Title Cash dissolved because of ongoing litigation that Hutcheson felt would bankrupt the company. [Exhibit 1, page 21, lines 2-12].

100.  On 8/31/2008, Hutcheson signed the Asset Purchase Agreement that he prepared, as President for both the Seller/Title Cash and the Purchaser/EZ Title. [Exhibit 1, page 33, line 18 to page 34, line 11; page 39, lines 8-13; *See also* Exhibit 11].

101.  Pursuant to the Asset Purchase Agreement, EZ Title agreed to pay Title Cash $692,937.46, which was subsequently used to pay debt's owed to Hutcheson, in exchange for Title Cash's: 1) going concern value; 2) agreement to assume all debts including but not limited to Kramer's litigation matter; and 3) agreement to indemnify and hold EZ Title, its officers, directors and shareholders, harmless from all business operations that predate the closing of the transaction, which includes but is not limited to Kramer's litigation matter. [Exhibit 1, page 132, lines 4-6, lines 13-18; page 133, lines 10-13; page 47, lines 1-19 (referring to the Asset Purchase Agreement discussed on page 45, lines 14-20); page 39, line 8 to page 42, line 20; Exhibit 11].

102.  Pursuant to the Asset Purchase Agreement, EZ Title retained and is currently using the following: 1) the name d/b/a Title Cash; 2) Title Cash's phone lines; 3) Title Cash's utility, receivable bank accounts, fixed assets, petty cash, lease and other deposits; 4) Title Cash's customers files with account status of open, paid-out, charged-off and worthless checks; 5) Title Cash's leases; and 6) Title Cash's employees. [Exhibit 1, page 39, lines 22-25 (leases); page 47, lines 23-25 (leases); page 128, lines 1-7, 15-21 (leases); page 48, lines 7-11 (assets and utilities); page 128, lines 8-14 (assets); page 130, lines 21 to page 131, line 1 (assets); page 132, lines 7-12 (utilities); page 48, lines 1-3 (phone lines); page 48, lines 4-6 (name); page 130, lines 13-23 (name) ; pages 126, 127 (employees);

13

Exhibit 11].

103.  EZ Title is paying for the legal fees of both EZ Title and Title Cash. [Exhibit 12].

### IX.  FACTS RELEVANT TO COUNT IX OF THE 3RD AMENDED AND SUBSTITUTED COMPLAINT.

### A.  Piercing Title Cash's corporate veil and holding Hutcheson liable for Title Cash's liabilities.

104.  Hutcheson, as incorporator, director, president, and majority or controlling shareholder of Title Cash, EZ Title, and Hutcheson, Inc., controls the operations and assets of the three entities. [*See* Supra at ¶¶ 1-3, 5, 16-19, 13, 25-27; Exhibit 1, page 61, lines 6-10; page 130, lines 9-17].

105.  Hutcheson directed Title Cash's operations as an employee of Hutcheson, Inc. [Supra at ¶¶ 72, 73, 87].

106.  Hutcheson continued conducting business as d/b/a Title Cash by transferring all of Title Cash's assets to EZ Title, another company that is owned solely by him and his family. [*See* Supra at ¶¶ 100-103, 105].

107.  Hutcheson requires Title Cash and EZ Title employees to be trained by Hutcheson, Inc. [Exhibit 1, page 19, lines 12-20; page 60, lines 17-19; Exhibit 5, page 51, line 12 to page 52, line 1].

108.  Hutcheson has an identical equitable ownership (55% ownership) in Title Cash, EZ Title, and Hutcheson, Inc. [Supra at ¶¶ 3, 19, 27].

109.  Hutcheson's family has identical equitable ownership (45% ownership) in Title Cash, EZ Title, and Hutcheson, Inc. [Supra at ¶¶ 4, 20, 28].

110.  Hutcheson operates Title Cash, EZ Title, and Hutcheson, Inc. as a single venture. [*See* Supra at ¶¶ 63-103].

111.  Hutcheson transferred all of Title Cash's meaningful or significant assets to EZ Title. [Supra ¶ 102; Exhibit 2].

112.  Hutcheson has Title Cash offices around the country. [Exhibit 1, page 61; Exhibit 13; Exhibit 5, page 57, lines 24-25; page 58, lines 1-2].

113.  Pursuant to lawsuits that could have possibly bankrupt the company,

Hutcheson transferred Title Cash's assets and going concern value to EZ Title while agreeing to indemnify and hold EZ Title, its officers, directors and shareholders, harmless from all business operations that predate the closing of the transaction, which includes but is not limited to Kramer's litigation matter. [Supra at ¶¶ 32-34; *See also* Exhibit 2].

114.  Title Cash's, Hutcheson, Inc.'s, and EZ Title's addresses were the identical to Hutcheson's in their respective Articles of Incorporation. [*See* Exhibits 2, 3, 4].

115.  Hutcheson concealed the identity of the financial interests of Title Cash and EZ Title until it filed the Motion to Quash. [*See* AP No. 09-28, Docket No. 043-0].

116.  Hutcheson, Title Cash, EZ Title, and Hutcheson, Inc. hired the same attorney, Thane Johnson, in this matter. [*See* Docket No. 071-0].

**B.  Piercing Hutcheson, Inc.'s corporate veil.**

117.  Hutcheson, as President of Hutcheson, Inc., conducted business on behalf of Title Cash in this matter. [*See* Supra at ¶¶72, 73].

118.  Hutcheson, Inc. directs some of Title Cash's legal affairs. [*See* Supra at ¶¶ 42-46].

119.  Hutcheson, Inc.'s property is used to conduct training for Title Cash and EZ Title employees. [Supra at ¶ 41].

120.  Hutcheson, Inc. and Title Cash share the same incorporator, director, and president, and shareholders. [Supra at ¶¶ 1, 2, 5, 23, 25, 26; *See also* Exhibits 2, 4].

121.  Hutcheson, Inc. and Title Cash hired the same attorney, Thane Johnson, in this matter. [*See* Docket No. 053-0].

122.  Hutcheson, Inc. failed to maintain a proper arm's length relationship with Title Cash. [*See* Supra at ¶¶ 75-88].

**C.  Piercing EZ Title's corporate veil.**

123.  EZ Title and Title Cash share the same incorporator, director, president, and shareholders. [Supra at ¶¶ 1-5, 15-19; *See also,* Exhibit 2, 3].

124.  Hutcheson, as president of both Title Cash and EZ Title, created and entered into an Asset Purchase Agreement on behalf of both companies. [Supra at ¶¶ 10, 70; Exhibit 11].

125.  Pursuant to the Asset Purchase Agreement, EZ Title agreed to pay Title Cash $692,937.46, which was subsequently used to pay debt's owed to Hutcheson, in exchange for Title Cash's: 1) going concern value; 2) agreement to assume all debts including but not limited to Kramer's litigation matter; and 3) agreement to indemnify and hold EZ Title, its officers, directors and shareholders, harmless from all business operations that predate the closing of the transaction, which includes but is not limited to Kramer's litigation matter. [Supra at ¶ 101].

126.  Pursuant to the Asset Purchase Agreement, EZ Title retained and is currently using the following: 1) the name d/b/a Title Cash; 2) Title Cash's phone lines; 3) Title Cash's utility, receivable bank accounts, fixed assets, petty cash, lease and other deposits; 4) Title Cash's customers files with account status of open, paid-out, charged-off and worthless checks; 5) Title Cash's leases; and 6) Title Cash's employees. [Supra at ¶ 102].

127.  EZ Title and Title Cash hired the same attorney, Thane Johnson. [Docket 053-0; Exhibit 12].

128.  EZ Title is paying for both Title Cash and EZ Title's legal fees. [Exhibit 12].

## X.  FACTS RELEVANT TO COUNT X OF THE 3RD AMENDED AND SUBSTITUTED COMPLAINT.

129.  Hutcheson, as incorporator, director, president, and majority or controlling shareholder of Title Cash, EZ Title, and Hutcheson, Inc., controls the operations and assets of the three entities. [*See* Supra at ¶¶ 1-3, 5, 16-19, 13, 25-27; Exhibit 1, page 61, lines 6-10; page 130, lines 9-17].

130.  The transfer of Title Cash's assets and going concern value to EZ Title is for the use and benefit of Hutcheson, Hutcheson, Inc. and EZ Title. [*See* Supra at ¶¶ 129, 104-110, 125, 126; Exhibit 1, page 19, line 5 to page 21, line 1].

131.  Hutcheson, Title Cash, EZ Title, and Hutcheson, Inc. concealed the identity of the financial interests of Title Cash and EZ Title until it filed the Motion to Quash. [*See* AP No. 09-28, Docket No. 043-0].

132.  Title Cash dissolved because of ongoing litigation that Hutcheson felt would bankrupt the company. [Exhibit 1, page 21, lines 2-12].

16

133.  Title Cash transferred substantially all of its assets and going concern value with indemnifying and hold EZ Title, its officers, directors and shareholders, harmless from all business operations that predate the closing of the transaction, which includes but is not limited to Kramer's litigation matter. [Supra at ¶ 101].

134.  The Asset Purchase Agreement occurred prior to incurring a judgment against Title Cash through this case. [Supra at ¶ 8].

Title Cash did not file a separate Statement of Genuine Issues as required by Montana Local Bankruptcy Rule ("Mont. LBR") 7056-1(a)(2).  Instead, at pages 2 to 5 of its combined response brief and cross motion for partial summary judgment (Dkt. 98), in a narrative section beginning with the bold heading on page 2 which reads "ST T MENT OF HE ACT", Title Cash sets forth several facts regarding Title Cash's organization, its loans to the Plaintiff and security agreements, the violations proceedings and settlement agreement with the Montana Department of Administration, Banking Division, Plaintiff's bankruptcy proceedings, and the state court proceedings.

## DISCUSSION

**I.  Summary Judgment**.

Summary judgment is governed by FED. R. BANKR. P. 7056.  Rule 7056, incorporating FED. R. CIV. P. 56(c), states that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  "The proponent of a summary judgment motion bears a heavy burden to show that there are no disputed facts warranting disposition of the case on the law without trial."  *Younie v. Gonya (In re Younie)*, 211 B.R. 367, 373 (9th Cir. BAP 1997) (quoting *Grzybowski v. Aquaslide "N' Dive*

17

*Corp. (In re Aquaslide "N" Dive Corp.)*, 85 B.R. 545, 547 (9th Cir. BAP 1987)).  The manner in which this burden is proven depends on which party has the burden on a particular claim or defense at the time of trial.

> If the *moving* party will bear the burden of persuasion at trial, that party must support its motion with credible evidence–using any of the materials specified in Rule 56(c)–that would entitle it to a directed verdict if not controverted at trial. Such an affirmative showing shifts the burden of production to the party opposing the motion and requires that party either to produce evidentiary materials that demonstrate the existence of a "genuine issue" for trial or to submit an affidavit requesting additional time for discovery.  If the burden of persuasion at trial would be on the *non-moving* party, the party moving for summary judgment may satisfy Rule 56's burden of production in either of two ways. First, the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim. Second, the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 330-34, 106 S.Ct. 2548, 2557, 91 L.Ed.2d 265  (1986) (Brennan dissent) (citations omitted).  *See also Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102-06 (9th Cir. 2000) (discussing burdens for withstanding summary judgment).

When seeking summary judgment, the moving party must initially identify those portions of the record before the Court which it believes establish an absence of material fact.  *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1987).  If the moving party adequately carries its burden, the party opposing summary judgment must then "set forth specific facts showing that there is a genuine issue for trial." *Kaiser Cement Corp. v. Fischback & Moore, Inc.*, 793 F.2d 1100, 1103-04 (9th Cir. 1986), *cert. denied*, 469 U.S. 949 (1986); FED. R. CIV. P. 56(e).  *See also Frederick S. Wyle Prof'l. Corp. v. Texaco, Inc.*, 764 F.2d 604, 608 (9th Cir. 1985) ("the opponent must affirmatively show that a material issue of fact remains in

18

dispute"). That is, the opponent cannot assert the "mere existence of some alleged factual dispute between the parties." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Moreover, "[a] party opposing summary judgment may not simply question the credibility of the movant to foreclose summary judgment." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

To demonstrate that a genuine factual issue exists, the objector must produce affidavits which are based on personal knowledge and the facts set forth therein must be admissible into evidence. *Aquaslide*, 85 B.R. at 547. All reasonable doubt as to the existence of genuine issues of material fact must be resolved against the moving party. *Liberty Lobby,* 477 U.S. at 247-48, 106 S.Ct. at 2509. However, "[d]isputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv.*, 809 F.2d at 630 (citing *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510). "A 'material' fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. The materiality of a fact is thus determined by the substantive law governing the claim or defense." *Id.*

If a rational trier of fact might resolve disputes raised during summary judgment proceedings in favor of the nonmoving party, summary judgment must be denied. *T.W. Elec. Serv.*, 809 F.2d at 630; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 202 (1986). Thus, the Court's ultimate inquiry is to determine whether the "specific facts" set forth by the nonmoving party, viewed along with the undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence. *T.W. Elec. Serv.*, 809 F.2d at 631. In the absence of any disputed material facts, the inquiry shifts to whether the moving party is entitled to judgment as a

19

matter of law.  *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552-53.

Mont. LBR 7056-1 governs summary judgment motions in this Court.  LBR 7056-1(a)(1) requires:

> **Statement of Uncontroverted Facts.**  A separate, short, and concise "Statement of Uncontroverted Facts" must accompany every motion for summary judgment. Failure to submit this statement constitutes grounds for denial of the motion.  The statement shall set forth separately each fact, in serial, not narrative form, and shall specify the specific portion of the record where the fact can be found (e.g., affidavit, deposition, etc.).

Plaintiff filed a separate statement of uncontroverted facts in support of her second motion for summary judgment.  Title Cash did not file a separate statement of uncontroverted facts in support of its cross motion for summary judgment on Count V based on collateral estoppel.  Pursuant to LBR 7056-1(a)(1), Title Cash's failure to submit its statement of uncontroverted facts constitutes grounds for summary denial, and the Court summarily denies Title Cash's cross motion for summary judgment on Count V based on its failure to comply with LBR 7056-1(a)(1)[6].

Title Cash's fact narrative in its combined brief and cross motion for partial summary judgment fails to satisfy LBR 7056-1(a)(2) which provides:

> **Opposition**.  Opposition to a motion for summary judgment, if any, must be filed within ten (10) days after the motion is served.  A separate, short, and concise "Statement of Genuine Issues", setting forth the specific facts, which the opposing party asserts establishes a genuine issue of material fact precluding summary judgment in favor of the moving party must be filed by the party opposing the motion together with an opposition brief.

---

[6]The Court denied Title Cash's prior motion for partial summary judgment for the same reason, stating: "This Court will not accept piecemeal factual contentions which are not in compliance with Rule 7056-1(a)(1)."  Notwithstanding, the Court will address the merits of Title Cash's collateral estoppel argument below

20

Because Title Cash failed to file a separate Statement of Genuine Issues as required by LBR 7056-1(a)(2), LBR 7056-1(a)(3) applies which provides: "**Facts Admitted**.  All material facts in the moving party's Statement of Uncontroverted Facts are deemed to be admitted unless controverted by a Statement of Genuine Issues filed by the opposing party."  For purposes of Plaintiff's second motion for summary judgment, except where previously decided or where contradicted by the evidence the Court will deem the material facts in her Statement of Uncontroverted Facts admitted under LBR 7056-1(a)(3).

## II.  Count V – Montana Consumer Protection Act Violations.

Plaintiff moves for summary judgment on Count V alleging violations of the Montana Consumer Protection Act ("CPA"), MCA § 30-14-101 *et seq*., and for violations of the Montana Title Loan Act, MCA § 31-1-826, seeking statutory damages and actual damages, treble damages, and attorney fees[7].  Plaintiff alleges several instances of unfair or deceptive acts by Title Cash in its conduct of trade or commerce with the Plaintiff.  The list is at pages 6 through 8 of Plaintiff's second motion and memorandum, and includes:  Willfully and knowingly entering into a loan (Note 768) with the Plaintiff and falsely collecting on Note 768; knowingly and intentionally changing the VIN of Plaintiff's Suburban on Note 768 and falsely claiming a security interest in the Suburban; willfully, knowingly and falsely filing false secured Proofs of Claim and amended claims; deceiving the Chapter 13 Trustee and applying payments from the Trustee to both secured Note 767 and unsecured Note 768 in violation of the Trustee's Final Report; admitting in a settlement agreement with the State of Montana, Department of

---

[7]The 3rd Amended Complaint at page 20 prays for punitive damages in Count V under MCA § 27-1-220.  That request was not repeated in her 2nd motion for summary judgment and memorandum at page 5.

Administration, Division of Banking and Financial Institution, that it engaged in unfair and fraudulent practices in violation of MCA § 31-1-825(1)(f) by collecting on Note 768 on a non-existent vehicle; false representations to the Montana Motor Vehicle Department regarding the amount of debt secured by the security agreement; and fraudulent practices by stating in state court pleadings that Plaintiff entered into two notes and security agreements secured by the Suburban.

The Court notes that Plaintiff's contentions regarding the filing of proofs of claim are repeated from its first motion for summary judgment and supporting statement of uncontroverted fact. This Court in Dkt. 55 at page 4, footnote 5, and page 17, refused to grant summary judgment based on Plaintiff's statements in footnotes that Title Cash's proofs of claim were false. In Plaintiff's latest Statement of Uncontroverted Facts, Nos. 57 and 58, her allegations that the proofs of claim were false are repeated. However, the Court has already decided against granting Plaintiff summary judgment on whether Title Cash intentionally filed false claims. Plaintiff did not seek to appeal that decision and did not move for reconsideration on whether Title Cash's claims were false

All reasonable doubt as to the existence of genuine issues of material fact must be resolved against the moving party. *Liberty Lobby,* 477 U.S. at 247-48, 106 S.Ct. at 2509. Title Cash argues that questions of fact exist on whether its proofs of claim were false and whether Title Cash deceived the Trustee, and that the accusations are made without obtaining the perspective of the Trustee or Title Cash's bankruptcy attorney Gary S. Deschenes. Those points are well taken. The only evidence from the Chapter 13 Trustee is the letter, Ex. 16 attached to Dkt. 75, in which he requests information regarding Title Cash's secured interest. Ex. 16 does

22

not support Plaintiff's contention that Title Cash deceived the Trustee, and no other statement

from the Trustee exists in the record. Likewise, Plaintiff did not include a statement from

Deschenes to support its contention that Title Cash filed false proofs of claim. At the summary

judgment stage, this Court must resolve all reasonable doubt as to the existence of genuine issues

of material fact against the moving party. *Liberty Lobby,* 477 U.S. at 247-48, 106 S.Ct. at 2509.

If a rational trier of fact might resolve disputes raised during summary judgment proceedings in

favor of the nonmoving party, summary judgment must be denied. *T.W. Elec. Serv.*, 809 F.2d at

630; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. at 587. With respect to the

proofs of claim, deceiving the Trustee, and changing the VIN of the Suburban, the Court

recognizes that a rational trier of fact might resolve disputes in favor of the nonmoving party, and

therefore summary judgment must be denied.

  With respect to the settlement agreement with the Montana Division of Banking and

Financial Institutions, Ex. 20 to Dkt. 75, Plaintiff contends that Title Cash agreed that it

"engaged in unfair and fraudulent practices." That contention mischaracterizes Ex. 20. Ex. 20

includes a statement that Title Cash was served with a notice of violation charging that Title

Cash violated MCA § 31-1-825(1)(f) and engaged in unfair and fraudulent practices in violation

of MCA § 31-1-825(1)(j). However, nowhere in Ex. 20 does Title Cash agree or admit that it

engaged in the violations charged. Ex. 20 provides that Title Cash admits to errors and improper

and incorrect documentation, and that they agree to settle the violations "to avoid a lengthy

administrative process." On the third page of Ex. 20, however, Title Cash admits only to

understanding "the nature of the violation *alleged*." (Emphasis added). Title Cash did not agree

on Ex. 20 that it engaged in unfair and fraudulent practices, and Ex. 20 provides that it is the

23

"complete agreement" between the parties. Title Cash agreed in Ex. 20 to release the liens from both loans and to refile the lien on Loan No. 767[8]. The Court concludes that Plaintiff failed to satisfy her burden of proof that no genuine issue of material fact exists on whether Title Cash engaged in unfair or deceptive acts and that Plaintiff is entitled to summary judgment as a matter of law on Count V.

Turning to Title Cash's cross motion for partial summary judgment, which the Court summarily denied above, the Court further denies the cross motion on the merits based upon collateral estoppel. To begin with, the filing by Title Cash of proofs of claim in Plaintiff's Chapter 13 case are only a few of the alleged unfair and deceptive acts alleged in Count V, so Title Cash would not be entitled to summary judgment on Count V in its entirety even if collateral estoppel applied.

Claim preclusion provides that a final judgment on the merits bars further claims by parties or their privies based on the same cause of action. *U.S. v. Bhatia*, 545 F.3d 757, 759 (9th Cir. 2008), quoting *United States v. Schimmels (In re Schimmels)*, 127 F.3d 875, 881(9th Cir.1997) (other citations omitted). The related doctrine of collateral estoppel, or issue preclusion, provides that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Bhatia*, 545 F.3d at 759, quoting *Ashe v. Swenson*, 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970)[9].

---

[8]For some unexplained reason the other loan is identified as "678" not 768 on Ex. 20.

[9]The Ninth Circuit noted that the Supreme Court recently clarified that "claim preclusion" and "issue preclusion" are collectively referred to as "res judicata". *Bhatia*, 545 F.3d at 759 n.2, quoting *Taylor v. Sturgell*, __ U.S. __, 128 S.Ct. 2161, 2171, 171 L.Ed.2d 155 (2008).

The Montana Supreme Court in *Boyd v. First Interstate Bank of Kalispell, N.A.* (1992), 253 Mont. 214, 218, 833 P.2d 149, 151, set out the 3 elements for collateral estoppel as:  (1) The identical issue raised and previously decided in prior adjudication; (2) final judgment on the merits was issued in the prior adjudication; and (3) the party against whom the plea is now asserted was a party or in privity with a party to the prior adjudication.

Title Cash contends that collateral estoppel precludes Count V because of the Plaintiff/Debtor's motion for valuation and the binding effect of Debtor's confirmed Plan under 11 U.S.C. § 1327(a).  The first element of collateral estoppel requires that the identical issue be raised and previously decided in prior adjudication.  *Boyd*, 253 Mont. at 214, 833 P.2d at 151. Plaintiff's CPA claims under Count V are not identical, and were not raised or previously decided in the underlying Chapter 13 case.  Plaintiff's CPA claims are based on violations of Montana statutes.  The valuation of Title Cash's security and confirmation were heard and decided based on federal bankruptcy rules and statutes.  In this Court's view they are not identical issues.  Title Cash's cross motion for summary judgment fails to satisfy the requirements for  collateral estoppel.

### III.  COUNT VII – Liability Based on Alter Ego.

In Count VII Plaintiff seeks summary judgment against Hutcheson and Hutcheson, Inc., and to pierce the corporate veil of Hutcheson, Inc., as an equitable remedy and hold them liable for Title Cash's violations under other counts.  Plaintiff argues that Hutcheson and Hutcheson, Inc., controlled Title Cash's decision making, and that Hutcheson was incorporator, director, president, and majority shareholder of Title Cash and Hutcheson, Inc., with his wife and children owning the remaining shares.  Plaintiff argues that Hutcheson commingled operations of Title

Cash and Hutcheson, Inc., and that Hutcheson controlled training, supervision, and controlled the decision making for Title Cash and Hutcheson, Inc.  Because of the lack of corporate formalities Plaintiff seeks summary judgment against Defendants based upon Title Cash being the alter ego of both Hutcheson and Hutcheson, Inc.

Title Cash contends that substantial questions of material fact exist on the question of alter ego.  Title Cash cites Hutcheson's deposition at pages 19, 124-25, and Lisa Harshbarger's deposition (Ex. 3 & 4 attached to Dkt. 98) at pages 14, 35, 37, 49, 55 and 66, as evidence that Title Cash managed its day-to-day work assignments and sought approval and assistance from Hutcheson, Inc., only for larger decisions for a monthly fee and that they were completely separate entities.

No concrete formula exists in Montana under which a court will disregard the separate identity of the corporate entity.  *Towe Antique Ford Foundation v. I.R.S.*, 999 F.2d 1387, 1391 (9th Cir. 1993).  Factors relevant to a finding of alter ego include but are not limited to:  (1) whether the individual in in a position of control or authority over the entity; (2) whether the individual controls the entity's actions without need to consult others; (3) whether the individual uses the entities to shield himself from personal liability; (4) whether the individual uses the business entity for his or her own financial benefit; (5) whether the individual mingles his own affairs in the affairs of the business entity; and (6) whether the individual uses the business entity to assume his own debts, or the debts of another, or whether the individual uses his own funds to pay the business entity's debts.  *Id.* (citing cases including *Hando v. PPG Indus., Inc.*, 236 Mont. 493, 771 P.2d 956, 960 (1989) and *Drilcon, Inc. v. Roil Energy Corp., Inc.,* 230 Mont. 166, 749 P.2d 1058, 1063-64 (1988).

Considering the arguments of the parties and the deposition references, and resolving all reasonable doubt as to the existence of genuine issues of material fact against the moving party, *Liberty Lobby,* 477 U.S. at 247-48, 106 S.Ct. at 2509, the Court finds that some evidence exists of the *Hando* factors, such as ownership of Title Cash by Hutcheson and his family, and ultimate control.  However, the Court concludes that Plaintiff has failed her burden for summary judgment on Count VII of showing that no genuine issue of material fact exists as to whether Title Cash is the alter ego of Hutcheson and Hutcheson, Inc., and that she is entitled to summary judgment on Count VII as a matter of law.  Genuine issues of material fact remain on whether Hutcheson and Hutcheson, Inc., mingled their own affairs in the affairs of Title Cash, used it to assume their own debts, used Title Cash to shield themselves from personal liability or whether they used their own funds to pay Title Cash's debts, as well as the degree of control they exercised over Title Cash's operations.  *Towe*, 999 F.2d at 1391; *Hando*, 771 P.2d at 960.

### IV.  COUNT VIII – Liability Based on Alter Ego & Successor Liability.

In Count VIII Plaintiff seeks summary judgment against EZ Title and Hutcheson and to hold them liable for Title Cash's debts under the theory of successor liability, and under alter ego theory[10].  Plaintiff contends that, based on the asset purchase agreement whereby EZ Title purchased and retained Title Cash's assets, assumed its debts, and Title Cash agreed to indemnify and hold EZ Title, its officers, directors and shareholders harmless for Title Cash's liability, that Hutcheson and EZ Title have total control over Title Cash's assets, liabilities and legal matters and that Hutcheson was recipient of the monetary arrangement between Title Cash and EZ title,

---

[10]The alter ego averments are in the 3rd Complaint, but Plaintiff's brief argues only successor liability under Count VIII.

27

which commingled the two corporations' operations and assets.  Plaintiff argues that Hutcheson

and EZ Title are liable based on successor liability under two theories:  (1) de factor merger

based on continuity of ownership and use of Title Cash's name, and EZ Title's assumptions of all

liabilities and obligations regarding the Plaintiff Loan; and (2) mere continuation based on

common identity of officers, directors and shareholders between Title Cash and EZ Title and the

existence of only one corporation, EZ Title, at the completion of the transfer.

By Stipulation (Dkt. 113) approved by this Court, EZ Title is liable for any judgment

entered against Title Cash under Count VIII.  The Stipulation is silent as to Hutcheson

personally.  Title Cash argues that questions of fact preclude summary judgment on Count VII

because no consolidation or merger occurred under the asset purchase agreement, good

consideration was given and EZ Title has separate books and hires its own employees.  As to

Hutcheson personally under Count VIII, to the extent it remains at issue the Court finds that

Plaintiff failed to satisfy her burden for summary judgment against Hutcheson on the basis of

successor liability, and the underlying liability for CPA violations under Count V.

### V.  COUNT IX – Liability Based on Piercing the Corporate Veil.

Count IX seeks to hold EZ Title, Hutcheson, Inc., and Hutcheson liable based on piercing

the corporate veil, based upon the case law summarized in *Towe,* 999 F.2d at 1391-92.  Plaintiff

argues that all the Defendants should be held liable for her claims because Hutcheson is the

incorporator, president and majority shareholder of the other Defendant corporation, his family

owns the remaining shares, he commingled the assets and operations of the Defendant

corporations, did not adequately capitalize Title Cash, uses the corporations as a conduit to

operate a single venture, concealed the identity of the financial interests of Title Cash and EZ

28

Title, and failed to maintain a proper arm's length relationships between Title Cash, EZ Title and Hutcheson, Inc., and himself by transferring Title Cash's assets to EZ Title and using Hutcheson, Inc., to manage and train employees of Title Cash and EZ Title.

Title Cash contends that genuine issues of fact on Count IX remain to be decided. Title Cash argues that Title Cash was responsible for its day-to-day work assignments and sought approval from Hutcheson, Inc., for larger decisions, citing Hutcheson's deposition at pages 19 and 124-25. Title Cash argues that Title Cash is completely separate from Hutcheson, Inc., and that Title Cash contacted Hutcheson, Inc., employees rather than Hutcheson.

The Ninth Circuit in *Towe* noted that piercing the corporate veil is an equitable remedy used to curb injustices resulting from the improper use of a corporate entity, and that since it is an equitable remedy no concrete formula exists and its use depends upon the circumstances of each case. 999 F.2d at 1391-92, quoting *Hando*, 771 P.2d at 960. Montana courts consider two factors in determining whether to pierce the corporate veil: (1) the party seeking to pierce the corporate veil must show that the corporation is the alter ego of the individual; and (2) "there must be a showing that the corporate entity was used as a subterfuge to defeat public convenience, justify wrong, or perpetrate fraud." *Towe*, 999 F.2d at 1391, quoting *Drilcon*, 749 P.2d at 1064.

Because summary judgment will be denied as to Counts V (CPA violations) and VII (alter ego), the Court finds that Plaintiff has failed to satisfy her burden for summary judgment under Count IX for piercing the corporate veil. The Court resolves all reasonable doubt as to the existence of genuine issues of material fact against the Plaintiff as the moving party. *Liberty Lobby,* 477 U.S. at 247-48, 106 S.Ct. at 2509. The Court further admits that a rational trier of

fact might resolve disputes raised during summary judgment proceedings on Count IX in favor of the nonmoving party, and so summary judgment must be denied. *T.W. Elec. Serv.*, 809 F.2d at 630; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. at 587.

### VI.  COUNT X – To Avoid Corporate Transfers as Fraudulent Transfers.

In Count X Plaintiff seeks to avoid the entire series of corporate transfers between Title Cash and EZ Title as fraudulent transfers, and to hold EZ Title, Hutcheson and Hutcheson, Inc., jointly and severally liable for Plaintiff's damages.  Plaintiff argues that Hutcheson created, dissolved, transferred, and continues to use Title Cash, EZ Title, and Hutcheson, Inc., with the actual intent to hinder, delay or defraud Plaintiff and other creditors determined under MCA § 31-2-333(2) by transferring all of Title Cash's assets to an insider while retaining possession and control of Title Cash and after being sued and shortly before a substantial debt was incurred, after which Title Cash became insolvent, concealing the transfer, and by absconding by failing to notify Plaintiff or the courts that Title Cash was dissolved.  In addition to avoiding the transfers and liability Plaintiff seeks attachment of Defendants' assets, for an injunction, and for appointment of a receiver to take charge of their assets.

Title Cash's brief does not address Count X.  Count X is based upon MCA § 31-2-333 which provides:

31-2-333. Transfers fraudulent as to present and future creditors.

 (1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(a) with actual intent to hinder, delay, or defraud any creditor of the debtor; or

30

(b) without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor:

> (i) was engaged or was about to engage in a business or transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

> (ii) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

(2) In determining actual intent under subsection (1)(a), consideration may be given, among other factors, to whether:

(a) the transfer or obligation was to an insider;

(b) the debtor retained possession or control of the property transferred after the transfer;

(c) the transfer or obligation was disclosed or concealed;

(d) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(e) the transfer was of substantially all the debtor's assets;

(f) the debtor absconded;

(g) the debtor removed or concealed assets;

(h) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(i) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(j) the transfer occurred shortly before or shortly after a substantial debt was incurred; or

(k) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

*Torgenrud v. Smith*, 17 Mont. B.R. 277, 283-84 (Bankr. D. Mont. 1999).

31

Montana law permits actual fraudulent intent to be established by circumstantial evidence, such as by various badges of fraud codified in § 31-2-333(2).  *Smith*, 17 Mont. B.R. at 384; *In re Valley Park, Inc.*, 16 Mont. B.R. 373, 380 (Bankr. D. Mont. 1998); *In re Teigen*, 13 Mont. B.R. 143, 146-47 (9th Cir. 1994) (*citing O'Connor v. Lewis*, 223 Mont. 270, 776 P.2d 1228, 1232-33 (1989)).  The badges of fraud, if found, do not necessarily constitute fraud *per se*, but merely afford grounds from which the Court is authorized to conclude that a transaction surrounded by them is fraudulent. *O'Connor*, 776 P.2d at 1233; *Montana Nat'l Bank v. Michels*, 193 Mont. 295, 631 P.2d 1260, 1263 (1981).

Despite Title Cash's failure to address Count X in its brief, the Court still must resolve all reasonable doubt as to the existence of genuine issues of material fact against the Plaintiff as the moving party. *Liberty Lobby,* 477 U.S. at 247-48, 106 S.Ct. at 2509.  The uncontroverted facts show that some of factors enumerated in MCA § 31-2-333(2) are present.  On the other hand the Court notes that Plaintiff's uncontroverted fact No. 131 alleges that Defendants concealed the identity of financial interests until it filed the motion to quash, which Plaintiff's brief argues at page 21 shows that Defendants absconded.  The two are not the same, and fact No. 131 on its face does not allege or show that Defendants absconded as Plaintiff argues.

As above, the Court concludes that a rational trier of fact might resolve disputes raised during summary judgment proceedings on Count X in favor of the nonmoving party, and so summary judgment must be denied. *T.W. Elec. Serv.*, 809 F.2d at 630; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. at 587.  The Court finds that Plaintiff has failed to satisfy her burden for summary judgment under Count X to show an absence of genuine issue of material fact under MCA § 31-2-333 regarding whether the corporate transfers were made with actual

intent to hinder, delay or defraud the Plaintiff.

On one final matter, Plaintiff's reply brief at Dkt. 105 extends to page 12.  Mont. LBR 9013-2 specifically states that "[a]ny reply memoranda by the party moving for summary judgment shall not exceed 10 pages."  At page 10 and continuing to the end of page 11 Plaintiff raises new theories seeking to hold Hutcheson personally liable under MCA § 35-1-935 and § 35-1-937.  These statutes are not found in the Plaintiff's 3rd Complaint, or in Plaintiff's second motion for summary judgment and supporting brief.  Defendants had no notice of these new claims until raised in Plaintiff's reply brief, and have not had an opportunity to respond.  The new statutory claims offend fundamental notions of due process.  This Court will not consider or decide Plaintiff's new claims based on MCA §§ 35-1-935 and 35-1-937.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over this matter under 28 U.S.C. § 1334.

2. This Court has jurisdiction to hear all state law claims under 28 U.S.C. § 1367.

3. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

4. Plaintiff failed to satisfy her burden of proof under Rule 7056(c) that no genuine issues of material fact exist and that Plaintiff is entitled to judgment as a matter of law under Counts V, VII, VIII, IX, and X of Plaintiff's 3rd Amended Complaint.

5. Title Cash failed to comply with Mont. LBR 7056-1(a)(1), which constitutes grounds for summary denial of its cross motion for summary judgment on Count V.

6. Title Cash failed to satisfy the requirement of identical issues as required for the application of the doctrine of collateral estoppel (issue preclusion).

**IT IS ORDERED** that a separate Order shall be entered in conformity with the above

33

denying the Plaintiff's second motion for summary judgment (Dkt. 74) and denying Title Cash's

cross motion for partial summary judgment on Count V (Dkt. 98).


BY THE COURT

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana